In Re: Incorporation of Borough of Seven Fields. Canterbury Village, Inc., Appellant.

Argued February 28, 1983, before Judges BLATT, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Richard DiSalle,* with him *Russell J. Ober, Jr.,* and *Kim D. Eaton, Rose, Schmidt, Dixon & Hasley,* for appellant.

*Frank P. Krizner,* with him *James E. Kerr, Mc-Candless & Krizner,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., June 30, 1983:

This case arises from a petition to incorporate as a borough a certain area of Cranberry Township, Butler County. When that petition was denied by the Court of Common Pleas of Butler County, the petitioner, Canterbury Village, Inc., sought our review of the trial court's decision.

Canterbury Village, Inc. (Canterbury) is a real estate development corporation that owns an area of land, exceeding 500 acres, in Cranberry Township (Township). On that property, the corporation is in the process of building a planned community called "Seven Fields," which, according to plans, will consist of about 2400 residential units. On August 31, 1981, a petition was filed in the Court of Common Pleas of Butler County to bring about the incorporation of Canterbury's development tract as a borough, to be known as the "Borough of Seven Fields."

The petition to incorporate was filed pursuant to Sections 201 and 202 of The Borough Code (Code).[1] Section 201 states that:

> The courts of quarter sessions may incorporate any area within their jurisdiction, not already incorporated or a part of an incorporated municipality, as a borough, which, after having been so incorporated, shall be a body corporate and politic by the name which shall be decreed by the court.

Section 202 provides, in part here pertinent, as follows:

> The application for incorporation shall be by a petition *signed by a majority of the freeholders residing within the limits of the proposed borough,...* The signatures must be secured within three months *immediately preceding the presentation thereof to the court.* Such petition shall be subscribed by and sworn to by at least one of the signers. The number of signers required to the petition shall be ascertained as of the date the petition was presented to court. (Emphasis added.)

The petition for incorporation was signed by twelve people, including one Thomas J. Reilly and his wife, Barbara. One of the averments of the petition was that Thomas J. Reilly was the president of Canterbury and as such represented Canterbury's freehold interest. Excepting Thomas J. Reilly and Barbara Reilly, the other signers of the petition were people who had agreed to purchase residential units in the "Seven Fields" development. According to the petition, the signatories were a "majority of the freeholders residing within the limits of the proposed borough."

The petition further averred as follows: that the Canterbury development tract has a topography and

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§45201, 45202.

road layout conducive to incorporation as a borough; that the Township itself is sparsely populated; that the area proposed for incorporation has a community of interests separate and apart from the rest of the Township; and, that the Township cannot provide the police and fire protection that will be needed by the residents of the "Seven Fields" development. The petition represented that the proposed borough, upon incorporation, would contract for adequate police and fire protection.

The Township filed a pleading that challenged the formal efficacy of the incorporation petition and the truth of the material averments contained in the petition. Among the Township's specific objections was an assertion that the area proposed for incorporation had no residents or inhabitants at the time the petition was filed, and had no freeholders except Canterbury itself. In that regard, the Township further asserted that the incorporation provisions of the Borough Code were not intended to be available to corporate land developers. Also, besides contending that the area proposed for incorporation was not "harmonious," the Township represented that the services needed by the prospective residents of "Seven Fields" were available from the Township.

The Court of Common Pleas heard the matter on March 10, 1982. On that date, at the commencement of the proceedings, counsel for the petitioners asked the court for leave to amend the petition: to add Canterbury itself, the owner of the tract, as a named petitioner for incorporation. Apparently, counsel considered the amendment necessary because those petitioners who had agreed to purchase units in "Seven Fields" had become unable to fulfill their agreements. Over the Township's objection, the court allowed the amendment.

At the evidentiary hearing before the trial court, testimony in support of the petition came from Thomas J. Reilly, the president of Canterbury. Reilly stated that "Seven Fields" would contain, on completion, about 2400 residential units; he also projected that the development would have a population of about 9,000. According to Reilly, Canterbury had already invested more than 20 million dollars in the development. As best we can determine from his testimony, slightly more than 50 townhouses had been completed. There was, however, clear and undisputed evidence that Canterbury had installed a complete road system, a complete water and sewer system, including an operating sewage treatment plant. In addition, according to Mr. Reilly, his corporation had entered into agreements by which the development would be provided with police and fire protection, and garbage collection. Reilly stated that, as of the time of the court proceedings, approximately 70 people resided in units in "Seven Hills" as tenants. He also testified that one of the residential units in the development was used by Canterbury as its business office.

In opposition to the incorporation petition, the Township's witnesses were, in the main, Township supervisors and other officers. Although Township officials recognized that the projected 9000 residents of "Seven Fields" would result in a doubling of the Township's population, testimony from the Township witnesses asserted that the Township could supply the municipal services that would be needed by "Seven Fields." In that regard, the Township's own case showed that, as of the time of the court proceedings, the Township had 23 full-time employees, including a 10-man police force and a 5-man road crew. The Township's fleet of vehicles included 5 police cars and 5 trucks for road maintenance. According to the record in this case, the Township was already responsible for policing and maintaining about 60 miles of roads.

The Township's witnesses, in setting forth their opposition to the petition, opined that incorporation of "Seven Fields" would be a "hindrance," that it would not "benefit" the Township, and that it would cause "total disruption and lack of continuity." The most specific amplification of those thoughts was a statement, by one of the supervisors, that other developers would attempt to form boroughs; and a statement that the proposed borough would represent an "island" whose laws were uncertain and which did not adequately assure municipal services to prospective residents. Another witness offered the objection that the people of the Township were accustomed to working together "as a unit."

Shortly after the initiation of this case, the Township engaged the Pennsylvania Economy League (Economy League) to analyze the impact of the incorporation of "Seven Fields" as a borough. The Economy League's report was completed in November of 1981, and was introduced at trial as part of the Township's case. That report concluded that the Township was able to provide the municipal services that would be needed by the residents of "Seven Fields." The report went on to opine that whether "Seven Fields," as an incorporated borough, could provide for its residents as well as the Township can is "problematical."

However, the Economy League's report reached an additional conclusion: that "Seven Fields" would be neither a great loss nor a substantial gain for the Township; and that the Township, in terms of land area, tax base, and population, could adapt to the incorporation with a minimum of disruption and adjustment. Indeed, according to the Economy League, it would be easier to make the change now, because the Township has not yet extended services to the development and the area produces miniscule current revenue for the Township. The report also stated that,

regardless of the outcome of "Seven Fields" attempt to incorporate, the continued progress and development of the Township would not be impaired.

In deciding the case, the trial court rejected the Township's argument that the petition for incorporation did not meet the procedural requirements of Section 202 of the Borough Code. Nevertheless, the court concluded that there were problems that militated against granting the petition. In reaching the latter conclusion, the court stated that the Township has a full body of municipal ordinances and regulations in effect that will afford "Seven Fields" residents the same services that are provided to others in the Township, and that the developer's ability to provide such services was "problematical." Moreover, the court questioned whether incorporating the development as a borough represented the true sentiments of the residents. The court also concluded that the incorporation would disadvantage the Township in such a way as to hinder its long term growth. As a final matter, the court determined that the proposed "Borough of Seven Fields" was not a harmonious whole with common interests and problems which can be properly served by borough government.

We agree with the trial court's determination that the petition satisfied the procedural requirements of Section 202 of the Code. Canterbury, as the fee simple owner of the tract in question, certainly qualifies as a "freeholder." And, since Canterbury was the only freeholder in the proposed area of incorporation, it was more than a "majority" of the freeholders. Furthermore, because Canterbury maintained its business office on its tract, the corporation must be deemed a "resident."

Although there was an issue raised concerning the addition of Canterbury's name to the petition, *nunc pro tunc*, that issue was, in our view, moot. It must

be remembered that when the petition was filed in August of 1981, one of the averments in the petition was that Thomas J. Reilly, a signatory, was the president of Canterbury and represented its freehold interest. Thus, when Reilly signed the petition he did so *as agent for Canterbury*; and such was sufficient to make the corporation a party to the petition as of that point. It is obvious that a corporation can act only through its officers and other agents. There is nothing on the face of the Borough Code that precludes a corporate freeholder from being a petitioner for borough incorporation.

In denying the petition in the instant case, the trial court concluded that incorporation of "Seven Fields" would be a hindrance to the Township. Yet, the court did not give a specific factual reason for that conclusion. Although witnesses for the Township testified that the incorporation would be a "hindrance," or would not "benefit" the Township, or would cause "disruption," none of those witnesses advanced any factual information to support those conclusory opinions. Moreover, the report of the Economy League, which was prepared for the Township and introduced *as part of its case*, concluded that the incorporation *would have no negative effect on the Township.*

As for the capacity of the proposed borough to provide its residents with municipal services, we see no fatality in the trial court's finding that such ability is "problematical." In that regard, it would seem that the capacity of any *proposed* borough would be "problematical." We must note, however, that the developers have already equipped "Seven Fields" with its own roads and own water and sewer systems, including an operating sewage treatment plant. As an additional matter, when we consider the Township's own evidence concerning the size and nature of its work force, and the number of service vehicles it has,

the Township's own capacity to service "Seven Fields" could be deemed "problematical."

We can see no sound basis for the court's conclusion that "Seven Fields" does not constitute a "harmonious whole" with common interests that can be properly served by borough government. "Seven Fields" is a planned residential community with clearly defined boundaries; it has its own road system, and its own water and sewer systems. Given the projected size and nature of the "Seven Fields" development, its projected population, and its location in the Township, a conclusion that the development is not a "harmonious whole" with needs separate and apart from the rest of the Township must be deemed, in our veiw, a conclusion that is disregardful of the obvious.

The factors to be considered in granting or denying a petition for borough incorporation are set forth in our opinion in *Bear Creek Township v. Penn Lake Park Borough*, 20 Pa. Commonwealth Ct. 77, 340 A.2d 642 (1975). Those factors or considerations are: whether the area proposed for incorporation is one harmonious whole with common interests and problems which can be properly served by borough government; whether public services, such as police, fire protection, water, and sewage disposal are to be provided by borough government; and whether the incorporation disadvantages the remaining township.

True, the question of whether or not to grant a petition for borough incorporation is addressed mainly to the discretion of the trial court. Yet, it is not beyond our scope of appellate review to decide whether the trial court has committed an abuse of discretion. *Whitehall Borough Incorporation Case*, 358 Pa. 90, 55 A.2d 746 (1947). The evidence in the instant case, including some coming from the Township itself, leads us to the conclusion that the proposed "Borough of Seven Fields" met the criteria for incor-

poration as measured by the standards in the *Bear Creek* case. We are constrained to conclude that for the trial court to have denied the petition in this case, on the evidence as shown by the record before us, constituted a clear abuse of discretion. Accordingly, we must reverse the trial court's decision, and direct the court to grant the petition here involved.

ORDER

AND Now, the 30th day of June, 1983, the order of the Court of Common Pleas of Butler County, dated June 2, 1982, at B T & S Docket 1981, is reversed; and the said trial court is hereby directed to grant the petition for borough incorporation.