562 A.2d 402

**In re INCORPORATION OF BOROUGH OF NEW MORGAN (Three Cases).**

**Appeal of Kathleen HOOD, et al. and Harry J. Smith, et al.,**

**Appeal of ROBESON TOWNSHIP, BERKS COUNTY, Pennsylvania.**

**Appeal of CAERNARVON TOWNSHIP, BERKS COUNTY, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued March 7, 1989.

Decided July 17, 1989.

522

Norman Ashton Klinger, Norman Ashton Klinger & Associates, P.C., Norristown, for appellants/intervenors.

Richard DiSalle, Thomas W. Corbett, Jr., Kim D. Eaton, Rose, Schmidt, Hasley & DiSalle, Henry M. Koch, Jr., Pittsburgh, for appellee-Morgantown Properties.

Thomas L. Wenger, Stephen J. Dzuranin, Wix, Wenger, Weidern, Fenstermacher & Gunnisson, Harrisburg, for Pennsylvania State Ass'n Tp., Sup'rs, amicus curiae.

Brett A. Huckabee, John A. DiGiamberardino, Huckabee & Weiler, Wyomissing, for Caernarvon Tp.

Norman E. Dettra, Jr., Rhoda, Stoudt & Bradley, Reading, for Robeson Tp.

George F. Mahaney, Sharon, for Pennsylvania State Ass'n of Boroughs, amicus curiae.

Before CRAIG, BARRY and PALLADINO, JJ.

PALLADINO, Judge.

Caernarvon Township, Robeson Township (Townships), Kathleen Hood, et al., and Harry J. Smith, et al. (Intervenors) (collectively, Appellants) appeal from a decision of

the Court of Common Pleas of Berks County (trial court) granting the petition of Morgantown Properties to incorporate the Borough of New Morgan.

The present dispute arises from the petition of Morgantown Properties (Applicant) to incorporate as a borough a tract of land it owns in Berks County. The prescribed procedure for the creation of a new borough is found in The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501. Specifically, sections 201–219 of The Borough Code, 53 P.S. §§ 45201–45219, govern the preliminary steps relating to incorporation of a borough. Section 201 authorizes courts of common pleas to incorporate an area within their jurisdiction as a borough. Section 202(a) provides that the application for incorporation shall be by a petition to the court of common pleas. In addition, section 202(a) provides that where the proposed borough is entirely in one township, the petition must be signed by a majority of the freeholders residing within the proposed borough. Where, as here, the proposed borough encompasses portions of different townships, the petition must be signed by a majority of the freeholders residing in each of such separate portions.

Section 202(b) requires the court of common pleas to establish a Borough Advisory Committee comprised of two residents of the proposed borough, two residents of the existing governmental unit or units,[1] and one resident of the county not residing in either area, who serves as the chairman of the committee. In addition, section 202(b) provides that the director of the County Planning Commission shall serve as an advisor to the committee.

Section 202(c) provides, in pertinent part:

(c) Such committee shall ... advise the court in relation to the establishment of the proposed borough. In particular, the committee shall render expert advice and find-

---

**1.** The two residents from the existing governmental unit or units are recommended by the respective governing body of the unit or units. These two members of the committee may not be residents of the proposed borough. Section 202(b).

ings of fact relating to the desirability of such an incorporation, including, but not limited to, advice as to:

(1) the proposed borough's ability to obtain or provide adequate and reasonable community support services such as police protection, fire protection and other appropriate community facility services;

(2) the existing and potential commercial, residential and industrial development of the proposed borough; and

(3) the financial or tax effect on the proposed borough and existing governmental unit or units.

53 P.S. § 45202(c). Section 202(d) provides, in full:

(d) The court, if it shall find, after hearing and advice of the committee, that the conditions prescribed by this section have been complied with, shall certify the question to the board of elections of the county for a referendum vote of the residents of the proposed borough. Upon receipt of the certified election results, the court shall enter a final decree granting or denying the prayer of the petitioners.

53 P.S. § 45202(d).

Section 204 sets forth various regulations for notice and payment of costs and expenses associated with the petition. Section 205 relates to the date upon which the borough government becomes effective. Section 206 provides that when the proposed borough embraces lands used exclusively for "farming or other large and unsettled lands, the court may, if it deems such land does not properly belong to the proposed borough, at the request of any party aggrieved, change the boundaries ... to exclude ... the land used for farming or such other purposes." Section 207 provides for the naming of the borough. Section 208 sets forth the requisites for the charter of the borough. Sections 210–219 govern various issues relevant to the post-incorporation period of the borough. None of those post-incorporation sections is at issue in this appeal.

On August 11, 1987, Applicant, a Pennsylvania limited partnership, presented to the trial court a petition for

incorporation of the Borough of New Morgan. The petition was signed by Raymond Carr (Carr), who is president of Culbertson Lakes, Inc., Applicant's sole general partner, and was joined in by Hays Run Associates as a tenant in common. Inasmuch as Applicant is the sole freeholder in the proposed borough,[2] the petition was deemed to have been signed by a majority of the freeholders residing in the proposed borough, as required by section 202(a). Accordingly, pursuant to section 202(b) of the Borough Code, the trial court established a Borough Advisory Committee, consisting of the required number of persons from each area and a chairman. Thereafter, the committee held over 15 hearings and heard more than 100 hours of testimony. The committee rendered a 3–2 decision, with the majority in favor of incorporation. Both the majority and minority issued a report to the trial court. The majority report included detailed findings of fact and conclusions of law, which the trial court adopted and incorporated into its opinion. *In Re: Incorporation of Borough of New Morgan*, (No. 193 Misc. Dkt., filed September 22, 1988), slip op. at 2. The facts are as follows.

The proposed borough is comprised of approximately 3671 acres of land, 2394 of which are presently located in Caernarvon Township. The remaining 1277 acres are located in Robeson Township. Applicant purchased the property from Beth Energy Mines, Inc. on June 1, 1985. Applicant's principal place of business and office are located within the area of the proposed borough. Applicant is the only property owner in the proposed borough, although there are six occupied homes on the premises. Applicant has conveyed to Hays Run Associates, a Pennsylvania limited partnership, a one-half interest in approximately 500 acres of the proposed borough. There was undisputed testimony that a landfill is proposed to be constructed on 400 acres of the 500 acre site. N.T., Feb. 17, 1988, at 60–61; *see* section A, committee findings of fact nos. 5 and 14. In addition, Hays

2. Applicant's status as sole freeholder in the proposed borough is undisputed; no issues concerning Hays Run Associates' status as a tenant in common have been raised.

Run Associates has an interest in approximately twenty acres of the proposed borough which are not part of the 500 acre tract discussed above. N.T., Feb. 17, 1988, at 61. The site of the twenty additional acres has been condemned by Berks County for the purpose of constructing a trash to steam plant. *Id.;* section A, committee finding of fact no. 5. The landfill has a projected handling capacity of 5,000 tons per day, while the trash to steam plant has a projected capacity of 1,000 tons per day. By virtue of section 1301 of the Municipal Waste Planning, Recycling and Waste Reduction Act,[3] the new borough would, apparently, be entitled to substantial host community fees.[4] However, those possible fees were not included in the projected revenue of the borough for its first five years of operation. N.T., Dec. 15, 1987, 7:00 P.M. hearing, at 40–41; section D, committee finding of.fact no. 13.

Aside from the landfill and trash to steam plant, Carr proposes to develop the new borough with a Victorian village, planned residential developments, a cultural center, a mixed use center, commercial areas, agricultural areas and open space areas. The Victorian village would include a 1,000 room hotel and 18 hole golf course, and would operate year round. The number of visitors per day was estimated at 25,000. Automobiles would not be permitted in the Victorian village; instead, transportation would be by horse, horse drawn vehicle and a rail system comprised of trolleys and steam driven trains. Borough of New Morgan Report by John Rahenkamp Consultants, Inc., Ch. 2, at 7.

As noted above, the trial court adopted and incorporated the majority's report. The trial court determined that the requirements of section 202 of the Borough Code had been met. Accordingly, pursuant to section 202(d) of the Borough Code, the trial court ordered the Berks County Board

3. Act of July 28, 1988, P.L. 556, Act No. 1988–101, 53 P.S. § 4000.1301 (Purdon's Pennsylvania Legislative Service, October 1988).

4. Section 1301(b) of the Municipal Waste Act, 53 P.S. § 4000.1301(b), provides that the host municipality benefit fee is $1.00 per ton of weighed solid waste or $1.00 per 3 cubic yards of volume-measured waste.

of Elections to conduct a referendum vote of the residents of the proposed borough. Nine residents voted in favor of incorporation, with one resident opposed to incorporation. On May 10, 1988, the trial court issued a final decision granting the petition for incorporation of the Borough of New Morgan. Appellants have appealed to this court.

Appellants have raised a total of eight issues. All Appellants argue that: 1) section 202 of the Borough Code is unconstitutional; and 2) the trial court decision should be set aside because two committee members were biased. In addition, the Townships argue that: 3) a limited partnership does not have capacity as a freeholder to petition for incorporation of a borough; 4) the Borough Code does not permit incorporation of an area of a township which has no freeholders; 5) Applicant failed to meet its burden of proof; 6) the trial court erred in failing to hold a hearing; and 7) the trial court erred in restricting the evidence required to be produced before the committee. Finally, Intervenors argue that: 8) Applicant's sole motivation in seeking incorporation was circumvention of local zoning laws and, therefore, the petition should have been denied. We shall address these issues in order, with the exception that issue (8) shall be considered with issue (5). Our scope of review is limited to determining whether the trial court abused its discretion. *Borough of Bridgewater Petition*, 87 Pa. Cmwlth. 599, 488 A.2d 374 (1985).

■ Appellants' constitutional argument is threefold. Appellants first argue that section 202 of the Borough Code is unconstitutional because it impermissibly impinges on the right to vote. Appellants argue that because only freeholders can petition the court of common pleas for incorporation of a borough, property ownership is somehow a prerequisite to the right to vote. We do not propose to treat Appellants' argument lightly, but we fail to see a constitutional voting issue in this case. Section 202 flatly states that all residents of the proposed borough are eligible to vote after a petition for incorporation has been filed with the court of

common pleas.[5]  Property ownership is indeed a prerequisite to petitioning the court of common pleas.  However, the only restriction on *voting* is based on residency.  Accordingly, section 202 does not require property ownership as precondition to voting and, therefore, does not unconstitutionally infringe on the right to vote.

■  Appellants next argue that section 202 is unconstitutional because it undercuts the people's right to self determination as set forth in Article I, section 2 of the Pennsylvania Constitution.  Appellants argue that section 202 infringes the right of the people to alter, reform or abolish their government.  Appellants' argument is based on the fact that the residents of the Townships are not entitled to vote on the incorporation of the new borough.  Appellants contend that section 202 permits the alteration of the government of the Townships without the consent of those governments, i.e., the people of the Townships.  However, section 202 does not authorize an alteration of government without the consent of the people.  Instead, section 202 provides for creation of a government, subject to the will of the people.

■  Finally, Appellants contend that section 202 violates the constitutional requirement, found in Pa. Const. Art. IX, § 8, that there shall be "uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of municipalities."  We squarely addressed this issue in our unanimous en banc decision in *Bear Creek Township v. Penn Lake Park Borough,* 20 Pa.Cmwlth. 77, 340 A.2d 642 (1975).  In *Bear Creek,* we stated that "if the Legislature had intended to include incorporation of a borough within this restriction, it could have done so by including the word 'incorporate' along with 'consolidate, merge and change boundaries.'"  *Id.,* 20 Pa.Cmwlth. Ct. at 79, 340

---

**5.** We have reviewed the two United States Supreme Court cases cited by counsel at oral argument.  Both cases, *Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975) and *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), involve situations where property ownership was a prerequisite to voting, not petitioning a court.

A.2d at 643. Accordingly, we held that the provisions of Art. IX, § 8 do not apply to the incorporation of a borough. We decline the invitation to review and/or reverse our holding in *Bear Creek.*

■ Appellants' second argument concerns the alleged bias of two of the members of the five person committee. Appellants point to certain testimony before the committee which indicates that the two committee members from the proposed borough (for purposes of this discussion, referred to as the New Morgan members) stated to another person, sometime in December,[6] that they were in favor of the proposed borough and intended to vote for it. In addition, Appellants point out that one of the New Morgan members is employed full-time by Applicant, and that both of the New Morgan members are tenants of Applicant. Appellants contend that these factors require that the votes of the two New Morgan members be stricken. After careful review, we decline to do so.

After the close of the hearings before the committee, Intervenors filed a motion to disqualify the two New Morgan members and the chairman of the committee.[7] The transcript of the hearing held before the trial court, on March 25, 1988 (which is also the date the motion to disqualify was filed), demonstrates that the trial court was well aware of the allegations of bias. On April 4, 1988, the trial court denied the motion to disqualify. The motion was denied without comment, and the alleged bias is not discussed in the trial court's opinion. We are loath to reverse the trial court in this situation. Given the particular circumstances of this case, and reviewing the issue in light of the provisions of the Borough Code, we decline to disqualify the votes of the two New Morgan members.

■ The next issue, raised by the Townships, is whether a limited partnership such as Applicant has capacity as a

6. The hearings were held throughout the period of December 9, 1987–February 24, 1988.

7. Intervenors have not pursued their request to disqualify with respect to the chairman.

freeholder to petition for incorporation of a borough. In *Canterbury Village, Inc. Appeal*, 75 Pa.Cmwlth. 334, 462 A.2d 865 (1983), we held that there is nothing in the Borough Code to prevent a sole corporate freeholder from petitioning for incorporation of a borough. Although the Townships point out various distinctions between the legal status of corporations and limited partnerships, we see no compelling reasons for treating the two entities differently for purposes of petitioning for the incorporation of a borough.

■ The Townships next argue that the Borough Code does not permit incorporation of an area of a township which has no freeholders. Although we certainly agree with the Townships' proposition, we cannot agree with their theory, which is as follows. Applicant's office is located in the portion of the proposed borough set in Caernarvon Township. Accordingly, the office is not located in the portion of the proposed borough set in Robeson Township. Thus, the Townships argue, Applicant cannot be a resident freeholder in Robeson Township. In fact, however, it is undisputed that Applicant is the sole freeholder of the entire tract. In addition, Applicant is a resident of the tract. The fact that Applicant's offices are located in the portion of the proposed borough in Caernarvon Township is of no import for purposes of the Borough Code. *See Canterbury Village Appeal.*

We turn now to the issue of whether Applicant failed to meet its burden of proof. As noted above, section 202(c) lists three specific factors upon which the committee is to render expert advice and findings of fact. Briefly, the three specific factors are: 1) the proposed borough's ability to obtain or provide adequate and reasonable support services; 2) the existing and potential development of the borough, including commercial, industrial and residential development; and 3) the financial or tax effect on the proposed borough and existing governmental units (in this case, the Townships). These factors were added to section 202, in 1981, by the Act of July 10, 1981, P.L. 247.

In *Bridgewater*, we considered the legislature's addition of the three factors, and concluded that the amendment to a large extent incorporated three guidelines adopted by this court in *Bear Creek*.[8] The *Bear Creek* guidelines, as presented in *Bridgewater*, 87 Pa.Cmwlth. at 602 n. 4, 488 A.2d at 375 n. 4, are as follows:

(1) Whether the area proposed for incorporation is one harmonious whole with common interests and problems which can be properly served by borough government;

(2) Whether public services such as police, fire protection, water and sewage disposal are to be provided by borough government; and

(3) Whether the incorporation disadvantages the remaining township.

Accordingly, the requirements for the grant of a petition for incorporation of a borough are relatively well established. The legislature has mandated that three factors be considered, and *Bear Creek* and *Bridgewater* require consideration of whether the proposed borough is a harmonious whole with common interests and problems which can be properly served by borough government.

Before addressing whether Applicant met its burden of establishing the prerequisites for incorporation of a borough, we shall here address Intervenors argument that the motivation of the Applicant in seeking incorporation of a borough is a factor which must be considered. Intervenors argument is based largely on our decision in *Bridgewater*. In *Bridgewater*, we affirmed the trial court's denial of a petition to incorporate. Although the opinion discusses many of the judicial and legislative guidelines for the incorporation of a borough, Intervenors focus on the following statement in the opinion: "The trial court found that the motivation for the proposed Borough was to segregate it from the rest of the Township." *Bridgewater*, 87 Pa. Cmwlth. at 604–05, 488 A.2d at 376.

8. *See also Two Ponds, Inc. Appeal,* 87 Pa.Cmwlth. 324, 329, 489 A.2d 939, 941 (1985) (The conditions in section 202(c) "may be compared with the three court-made factors...."

Based on our reference to motivation in *Bridgewater*, Intervenors contend that motivation is a separate factor which must be considered by the committee and the trial court. Although we are not prepared to hold that motivation is always a crucial factor in borough incorporation cases, we agree with Intervenors that motivation is an important aspect of this case.[9] Accordingly, we shall address the question of motivation in our discussion of whether Applicant has established the requirements for incorporation of a borough, i.e., whether Applicant has met its burden of proof.

■ The Townships assert 1) that the proposed borough is not a harmonious whole and 2) that the disadvantages of incorporation to the Townships are substantial and militate against creation of a new borough. With regard to whether the borough is a harmonious whole, the Townships assert that the only borough projects which are in progress are for the landfill and the trash to steam plant, that these waste disposal systems are not in harmony with the remainder of the proposed borough, that the majority of the tract is presently unsettled,[10] and that the proposed resort, village, and other development is merely a vision and pipe dream of Carr.[11] We have exhaustively reviewed the record in this case, and we are unable to conclude that the trial court

9. In *Two Ponds*, we noted that the trial court had dismissed a petition for incorporation on the ground that the incorporation would disadvantage the remainder of the township by subverting the existing zoning and planning codes. In *Two Ponds*, however, the trial court had not appointed a Borough Advisory Committee. Accordingly, we remanded the case for the proceedings required by section 202 of the Borough Code.

10. We note that section 206 of the Borough Code authorizes the trial court to exclude from the proposed borough "large and unsettled lands" if it deems that such land does not properly belong to the proposed borough. The trial court did not exclude any lands from the proposed borough. Although the Townships make an argument that parts of the Townships should have been excluded from the proposed borough, we do not agree. Applicant's proposed development includes plans to make use of nearly every yard of its property. Thus, it does not seek to seize unsettled land from the Townships merely to establish such land as part of the new borough.

11. As noted earlier, Carr is the president of Culbertson Lakes, Inc., the general partner of Applicant.

erred in finding that the proposed borough is a harmonious whole. Applicant presented numerous exhibits, including detailed maps of the proposed borough, geological reports, water testing reports, and a comprehensive report detailing the development of the borough. This evidence, combined with Carr's testimony, supports a finding that the proposed borough would be one harmonious whole.

The Townships next argue that they will be substantially disadvantaged by incorporation of the proposed borough. Caernarvon Township would lose $9,917.00 per year in taxes, $9,084 of that amount resulting from lost real estate taxes. This amount represents 3.2% of Caernarvon Township's general fund. Robeson Township would lose 1,265.00 per year in taxes. Many of the proposed borough's boundaries are Township roads. The proposed borough would be serviced by these roads, but the Townships would continue to be responsible for their maintenance. In addition, as noted earlier, if the borough is created, it, rather than Caernarvon Township, will receive any host community fees generated by the landfill and the trash to steam plant.

However, the committee found that there would also be advantages to the Townships if the borough were created. The development of the borough would generate revenue because development of adjoining land would escalate. The borough would generate outside revenue which would offset any loss of tax revenue. In addition, the development of the borough is expected to result in the creation of a substantial number of jobs. Also, the Townships would have to substantially expand their municipal services in order to provide for residents of and visitors to the development if it were not incorporated as a borough. We have carefully reviewed the record, and we cannot conclude that the trial court abused its discretion in granting the petition for incorporation.

■ We turn now to the issue of motivation, as discussed above. With regard to motivation, the committee stated: "Applicant is basically motivated by a desire to establish an independent governmental agency which will compliment

[sic] the conceptual theme of a cohesive combination of related but unique land and development uses unfettered by unreasonable governmental restraints." The committee also found that the present zoning is not adequate for the projected community. In addition, the committee noted that the borough would be subject to no zoning ordinance until such time as it chose to enact one, inasmuch as Berks County does not have a zoning ordinance. However, Berks County does have land use regulations, and can enforce those regulations in the absence of a local ordinance.

We do not doubt that Applicant is motivated in part by a desire to escape certain governmental controls.[12] However, that desire is not necessarily contrary to the Borough Code, nor is it the sole motivating factor. Carr testified that financial backing is contingent, to some extent, on the degree of control held by the developer. In addition, the borough is located in two townships. As such, coordination of local zoning ordinance would be required. Under these circumstances, the trial court did not abuse its discretion in granting incorporation.

The Townships next argue that the trial court erred in failing to hold a hearing. We note that the trial court did hold a hearing on March 25, 1988, although no witnesses were presented and it seems the only evidence accepted by the trial court was the record created before the committee. The trial court's refusal to hear further testimony was a decision within its sound discretion and, given the voluminous record created before the committee, there was no abuse of discretion.

Finally, the Townships argue that the trial court erred in restricting the evidence required to be produced before the committee. The Townships requested production of various legal documents regarding Applicant, Hays Run Associates, and a landfill developing company. The re-

12. Applicant has met with public opposition to the plans for a landfill and trash to steam plant. In addition, plans to hold some sort of rock concert or musical festival on the site were cancelled, apparently because of public opposition to the event.

quested documents were eventually produced, pursuant to a court order, with all financial information and references deleted. The Townships were unable to elicit from witnesses certain information they sought with regard to the documents. The Townships sought to prove, via the various documents and witnesses, that the motivation of the Applicant was to circumvent existing zoning and planning regulations of Caernarvon Township.

Review of the record establishes that the issue of Applicant's motivation was squarely addressed on numerous occasions. Applicant's witnesses, most notably Carr, were exhaustively cross-examined by counsel for Robeson Township, counsel for Caernarvon Township and counsel for Intervenors. The trial court did not err in refusing to allow further evidence on this issue.

Affirmed.

## ORDER

AND NOW, July 17, 1989, the decision of the Court of Common Pleas of Berks County in the above-captioned matter is affirmed.

BARRY, Judge, dissenting.

I must respectfully dissent to the majority opinion.

The motivation for the incorporation of the Borough of New Morgan, as acknowledged by the court-appointed Borough Advisory Committee and the majority opinion here, was to bypass the zoning and land development restrictions of Robeson and Caernarvon Townships on the uses sought to be developed by Morgantown Properties, *i.e.*, a landfill and trash to steam plant. We agree with the majority that we cannot rely on *Two Ponds, Inc. Appeal*, 87 Pa.Cmwlth. 324, 489 A.2d 939 (1985), to dispose of this question inasmuch as the Court decided that case on a different issue. I would find, however, that the case now before us provides an appropriate vehicle by which to affirmatively state that the type of subversion of zoning and land use planning

present in this case is not an appropriate motivation for the incorporation of a borough. I simply do not believe that the intent of the legislature in enacting the incorporation provisions of The Borough Code encompassed a scheme such as that proposed here. I would conclude, then, that the trial court abused its discretion in granting this incorporation petition. *See Canterbury Village, Inc. Appeal (In Re: Incorporation of Borough of Seven Fields)*, 75 Pa.Cmwlth. 334, 342, 462 A.2d 865, 870 (1983), where this Court found an abuse of discretion, reversed a trial court and concluded:

> True, the question of whether or not to grant a petition for borough incorporation is addressed mainly to the discretion of the trial court. Yet, it is not beyond our scope of appellate review to decide whether the trial court has committed an abuse of discretion. *Whitehall Borough Incorporation Case*, 358 Pa. 90, 55 A.2d 746 (1947).

Further, the trial court denied a motion to disqualify two members of the court-appointed Borough Advisory Committee which was based on allegations of bias. As stated in the majority opinion, two so-called New Morgan committee members stated before the hearings were concluded that they intended to vote for it. Further, one of the members is employed full time by applicant, and both of the New Morgan committee members are tenants of applicant. I believe the trial court should have made findings of fact on the issue of bias. The absence of such findings renders the trial court's order and opinion incapable of meaningful appellate review. Accordingly, with respect to this issue I would remand the case for the purpose of having the trial court comply with the provisions of Pa. R.A.P. 1925(a). *Michaels Development Co., Inc. v. Benzinger Township Board of Supervisors*, 46 Pa.Cmwlth. 337, 407 A.2d 895 (1979).

In conclusion I dissent to the majority opinion on two alternative grounds. First and foremost I believe a reversal is in order based on the issue of motivation. Second, I believe the case should, at least, be remanded for findings of fact on the issue of bias.