597 A.2d 274

**PATRICK MEDIA GROUP, INC., Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1991.

Decided Sept. 10, 1991.

Petition for Allowance of Appeal Granted Jan. 27, 1992.

Blaine A. Lucas, for petitioner.

Michael F. Faherty, Asst. Counsel, for respondent.

Before CRAIG, President Judge, KELLEY, J., and NARICK, Senior Judge.

CRAIG, President Judge.

Patrick Media Group, Inc. (Patrick) appeals an order by the Pennsylvania Department of Transportation (DOT) affirming a hearing officer's decision to deny Patrick's application for a permit for an outdoor advertising device in Ohio Township.

## ISSUE

The precise issue is whether a second class township in Pennsylvania is an "incorporated municipality." Thus, this case turns upon a significant point which, although well established in Pennsylvania by our statutes, has not been explicitly articulated in any court decision. That point is that all parts of the Commonwealth of Pennsylvania are within incorporated municipalities, i.e., municipal corporations, sub-classified as cities, boroughs, "incorporated towns," and townships of the first and second class. In this respect, Pennsylvania is unlike many other states where some territory within the counties is located entirely outside of any local government other than the county.

## HISTORY OF CASE

The facts in this case, as found by the hearing officer, are that Patrick applied to DOT for a permit on June 21, 1989, to erect an outdoor advertising sign on property located in Ohio Township, a township of the second class. The proposed commercial advertisement sign would be located within 600 feet of the nearest edge of the right-of-way of Interstate 279, which is regulated by the Outdoor Advertising Control Act of 1971 (State Act).[1] DOT denied Patrick's application on August 31, 1989.

1. Act of December 15, 1971, P.L. 596, No. 160, *as amended,* 36 P.S. §§ 2718.101–2718.115.

Section 4 of the State Act, 36 P.S. § 2718.104, provides in relevant part:

To effectively control outdoor advertising, while recognizing it to be a legitimate commercial use of property and an integral part of the business and marketing function, no outdoor advertising device shall be erected or maintained: (1) within six hundred sixty feet of the nearest edge of the right-of-way if any part of the advertising or informative contents is visible from the main-traveled way of an interstate or primary highway, except:

. . . .

(v) Outdoor advertising devices *in areas zoned commercial or industrial* along the interstate system and lying *within the boundaries of any incorporated municipality* as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial. (Emphasis added.)

Thus, an outdoor advertising device is permitted within 660 feet of an interstate or primary highway if the proposed location is in (1) an area now zoned commercial or industrial within the boundaries of an incorporated municipality as such boundaries existed as of September 21, 1959, or (2) an area established by law as industrial or commercial as of September 21, 1959.

The hearing officer found that, on September 21, 1959, Ohio Township was a second class township (and still is). Although the area of the proposed sign location was then zoned residential, it is presently zoned M for manufacturing, i.e., industrial; hence, the pivotal question is whether the township was an incorporated municipality as of September, 1959.

The hearing officer issued a proposed order to affirm the denial of the application, concluding (1) that the proposed sign does not qualify under the first exception of § 4(v) of the State Act on the ground that second class townships are not "incorporated municipalities," which, according to a regulation of DOT, are only the "[c]ities of all classes,

boroughs, towns and first class townships," 67 Pa.Code § 445.2; and (2) that the proposed sign does not qualify under the second exception because the proposed location was within an area zoned residential on September 21, 1959.

Patrick filed exceptions to the proposed order, but DOT's Secretary of Transportation denied the exceptions and affirmed the proposed order on August 22, 1990.

Patrick now contends that DOT's regulation is contrary to the state's statutes in its exclusion of second class townships from the category of "incorporated municipalities." Alternatively, Patrick argues that the proposed area was legally used for commercial or industrial purposes on September 21, 1959, and therefore that DOT erred in finding that the area was not "clearly established by law as commercial or industrial" for purposes of the State Act.

Additionally, DOT, alleging that Patrick is attempting to introduce new evidence into the record, has filed a motion to quash appendices attached to Patrick's reply brief, which provide comparative statistical data on cities, boroughs, townships and home rule communities. Patrick asserted during its oral argument that this court can take judicial notice of these statistics.

## 1. MOTION TO QUASH APPENDICES

■ Initially, we must address the issue of admissibility of the appendices attached to Patrick's reply brief. An appellate court may take judicial notice of a fact to the same extent as a trial court; however, an appellate court may not take judicial notice of a fact that was not offered into evidence at the factfinding level. *Ware v. McKnight,* 368 Pa.Superior Ct. 502, 534 A.2d 771 (1987), *remanded on other grounds,* 520 Pa. 89, 552 A.2d 666 (1988).

■ Because Patrick did not offer the statistical data contained in its appendices into evidence at the factfinding stage of this case, this court cannot take judicial notice of those statistics at this appellate stage. Therefore, DOT's motion to quash the appendices is sustained.

## 2. THE "INCORPORATED MUNICIPALITY" EXCEPTION

▮ The determinative issue on the merits of this case relates to the first exception, whether Patrick's proposed sign qualifies for approval on the ground that it is located in an area zoned industrial along the interstate system lying within the boundaries of an "incorporated municipality" as such boundaries existed on September 21, 1959.

Patrick argues that DOT wrongfully excluded second class townships from its regulatory definition of incorporated municipalities in 67 Pa.Code § 445.2, quoted above.

### *Federal Act Background*

At the outset, a review of the Federal Highway Beautification Act of 1965 (Federal Act), 23 U.S.C. § 131, is necessary to understand the intent of Pennsylvania's legislature in enacting the State Act. In summary, the Federal Act is intended to protect the public investment in the interstate and primary highway system, to promote the safety and recreational value of public travel, and to preserve natural beauty. For states failing to control outdoor advertising within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of the system, the Federal Act authorizes the Secretary of Transportation to reduce by 10% the amount of Federal-aid highway funds.[2]

2. The full text of the two sections of the Federal Act cited above are as follows:

**§ 131. Control of outdoor advertising**

(a) The Congress hereby finds and declares that the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.

(b) Federal-aid highway funds apportioned on or after January 1, 1968, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs, displays, and devices which are within six hundred and sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of the system, and Federal-aid highway funds apportioned on or after January 1, 1975, or after the

Significantly, however, in 1971, when Pennsylvania enacted the State Act, subsection (b) of the Federal Act provided, in part:

Agreements entered into between the Secretary of Commerce and State highway departments under this section shall not apply to those segments of the Interstate System which traverse commercial or industrial zones *within the presently existing boundaries of incorporated municipalities* wherein the use of real property adjacent to the Interstate System is subject to municipal regulation or control, or which traverse other areas where the land use, as of the date of approval of this Act, is clearly established by State law as industrial or commercial.... (Emphasis added.)

Furthermore, federal regulations continue to define the controlled portion of an interstate system as any portion which

[i]s not excluded under the terms of the act which provide that agreements entered into between the Secretary of Transportation and the State Highway Department shall not apply to those segments of the Interstate System which traverse commercial or industrial zones within the boundaries of *incorporated* municipalities, as such boundaries existed on September 21, 1959, wherein the use of real property adjacent to the Interstate System is

expiration of the next regular session of the State legislature, whichever is later, to any State which the Secretary determines has not made provision for effective control of the erection and maintenance along the Interstate System and the primary system of those additional outdoor advertising signs, displays, and devices which are more than six hundred and sixty feet off the nearest edge of the right-of-way, located outside of urban areas, visible from the main traveled way of the system, and erected with the purpose of their message being read from such main traveled way, shall be reduced by amounts equal to 10 per centum of the amounts which would otherwise be apportioned to such State under section 104 of this title, until such time as such State shall provide for such effective control. Any amount which is withheld from apportionment to any State hereunder shall be reapportioned to the other States. Whenever he determines it to be in the public interest, the Secretary may suspend, for such periods as he deems necessary, the application of this subsection to a State.

subject to municipal regulation or control, or which traverse other areas where the land use as of September 21, 1959, was clearly established by State law as industrial or commercial.

23 C.F.R. § 750.102(c)(3) (emphasis added).

Therefore, to avoid losing substantial Federal-aid highway funds, Pennsylvania passed the State Act using specific language adopted from the Federal Act in effect in 1971, including the use of the term "incorporated municipalities." Because the legislature did not include a statutory definition of that term within the State Act,[3] DOT defined "incorporated municipalities" in its regulations; however, DOT excluded second class townships (and only second class townships) from that definition. DOT's invention of that exclusion was contrary to Pennsylvania's statutes governing municipal entities.

### Corporate Status of Second Class Townships

Our laws clearly create second class townships as corporate entities, and therefore as incorporated municipalities. Specifically, under The Second Class Township Code,[4] second class townships may sue and be sued, convey and acquire real and personal property, § 701 of The Second Class Township Code, 53 P.S. § 65701; make contracts, § 801 of The Second Class Township Code, 53 P.S. § 65801; adopt and enforce zoning ordinances, § 702, cl. XXV of The Second Class Township Code, 53 P.S. § 65725; prohibit nuisances, § 702, cl. XII of The Second Class Township Code, 53 P.S. § 65712; regulate parks, § 702, cl. XXIII of The Second Class Township Code, 53 P.S. § 65723; and provide police protection and promote the public safety, health, convenience and welfare of its citizens, § 702, cl.

---

**3.** "Municipal corporation" is defined in the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, as:

(1) When used in any statute finally enacted on or before December 31, 1974, a city, borough or incorporated town.

(2) When used in any statute finally enacted on or after January 1, 1975, a city, borough, incorporated town or township.

**4.** Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–67605.

XXXVI of The Second Class Township Code, 53 P.S. § 65743.

A significant indication of a municipality's corporate existence is the power to impose taxes; unincorporated territory has no taxing power. Under § 2 of the Local Tax Enabling Act,[5] second class townships are expressly listed among the municipal bodies which may levy, assess, and collect taxes on persons, transactions, occupations, privileges, subjects and personal property within their boundaries, and upon the transfer of real property within their boundaries.

For comparison, we note that the authority vested in first class townships, which are included in DOT's definition of "incorporated municipalities," is no more extensive for the purpose of upholding the State Act than that which is listed above for second class townships.

Under The First Class Township Code,[6] first class townships may sue and be sued, convey and acquire real and personal property, § 1501 of The First Class Township Code, 53 P.S. § 56501; make contracts, § 1801 of The First Class Township Code, 53 P.S. § 56801; adopt and enforce zoning ordinances, § 1502, cl. I, II of The First Class Township Code, 53 P.S. § 56502 (formerly § 3101 of The First Class Township Code, 53 P.S. § 58101); prohibit nuisances, § 1502, cl. XXVI of The First Class Township Code, 53 P.S. § 56526; regulate parks, § 3009 of The First Class Township Code, 53 P.S. § 58009; provide police protection, § 1502, cl. V of The First Class Township Code, 53 P.S. § 56505; and promote the public safety, health, convenience and welfare of its citizens, § 1502, cl. XLIV of The First Class Township Code, 53 P.S. § 56544.

Like second class townships, first class townships also have the power to impose taxes, under the identical section of the same enabling act.

5. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6902.
6. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502.

Finally, all second class townships, just like first class townships, cities, boroughs, and incorporated towns,[7] are authorized by art. 9, §§ 2, 3 of the Constitution of the Commonwealth of Pennsylvania, to frame and adopt municipal charters or plans of government. Under the Home Rule Charter and Options Plan Law (HRCL),[8] any "municipality"—defined as any township (as well as any county, city, borough or incorporated town)—is authorized to adopt a home rule charter or optional plan of government, which defines "the powers, the structure, privileges, rights and duties of the municipal government and limitations thereon." Section 102 of the HRCL, 53 P.S. § 1–102.

DOT has no authority to support its exclusion of second class townships from its definition of "incorporated municipalities." Therefore, a second class township is as much an incorporated municipality as a first class township, indeed as much as cities of all classes, boroughs and towns.[9]

The authority of second class townships to impose taxes and enact laws, in the form of ordinances, makes it very clear that they are full-fledged incorporated municipalities rather than mere territorial components of counties, as townships are in some other states.

The legislature, in adopting specific language from the Federal Act for the State Act, simply failed to note the inappropriateness of a distinction as to "incorporated municipalities" in Pennsylvania. In the State Act, the reference to "incorporated" municipalities is harmless surplusage.

7. Incorporated municipalities are not to be confused with incorporated towns, of which Bloomsburg is the only one in Pennsylvania, in that incorporated towns, as well as boroughs and cities, have similar authority to first and second class townships, as set forth above.

8. Act of April 13, 1962, No. 62, *as amended,* 53 P.S. §§ 1–101–1–1309.

9. In Pennsylvania, we speak of "incorporating" boroughs out of all or part of townships of the first or second class. *See In re Incorporation of Borough of Glen Mills,* 125 Pa.Commonwealth Ct. 604, 558 A.2d 592 (1989), *appeal denied, Petition of Glen Mills Schools,* 523 Pa. 651, 654, 567 A.2d 654 (1989). However, that wording does not indicate that townships are themselves unincorporated; DOT itself does not question the incorporated status of first class townships.

The reality is that every square inch of this Commonwealth *is* located within an incorporated municipality.

Therefore, because our statutes establish second class townships as incorporated entities—i.e., incorporated municipalities—and provide full zoning powers and other authority to second class townships sufficient to uphold the intent of the legislature to conform to federal requirements, DOT's truncated definition of "incorporated municipalities," upon which the hearing officer and DOT relied in denying Patrick's application, is invalid in that respect because it is contrary to the statutes.

Thus, because the proposed location is in an area currently zoned commercial or industrial, and because Ohio Township was an incorporated municipality on September 21, 1959, Patrick's proposed sign does qualify for approval under the first exception listed in § 4(v) of the State Act.

Accordingly, DOT's order is reversed, and this case is remanded to DOT for approval of the submitted application.

## ORDER

1. The respondent's motion to quash appendices to the petitioner's reply brief is sustained.

2. The order of the Secretary of Transportation of the Pennsylvania Department of Transportation, dated August 22, 1990, No. 096 A.D.1989, is reversed, and the case is remanded to the Department of Transportation for approval of the petitioner's submitted application to erect an outdoor advertising device in Ohio Township.

Jurisdiction relinquished.