646 A.2d 6

**In re INCORPORATION OF BOROUGH OF POCONO RACEWAY.**

**Appeal of POCONO INTERNATIONAL RACEWAY, INC., Joseph R. Mattioli and Rose Mattioli, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided July 13, 1994.

Richard DiSalle, for appellants.

Therese Anne Hardiman, for appellee, Tunkhannock Tp.

Andrew Mutch Knowlton for appellee, Tunkhannock Tp. Residents' Committee.

David A. Martino, for appellee, Cortright Road Residents.

Before CRAIG, President Judge, SMITH, J., and KELTON, Senior Judge.

SMITH, Judge.

Pocono International Raceway, Inc. (Pocono) and Joseph R. and Rose Mattioli (collectively Appellants) appeal from the January 19, 1994 order of the Court of Common Pleas of Monroe County that denied Appellants' exceptions and motions for post-trial relief from the trial court's December 20, 1993 order denying Appellants' petition for incorporation of the Borough of Pocono Raceway (Borough). The broad issue raised for this Court's review is whether the trial court erred or abused its discretion in denying the petition for incorporation by considering factors beyond those outlined in Section 202 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 45202.

I

(a)

On October 5, 1992, Appellants filed a petition for incorporation of the Borough, which is currently located within Tunkhannock Township (Township). Pocono is owned and operated by the Mattioli family and is host to NASCAR stock car

races in the summer months. The area proposed for incorporation consists of 1,026 acres of land which is gently rolling, well drained, and physically well suited for development. The predominant use of land is devoted to the race track and its attendant operations. Several homes already exist within the area of the proposed Borough. Appellants also presented a plan for development of an area of the proposed Borough which is to contain 254 lots for single-family, detached homes on 130 acres. The proposed Borough is predominantly surrounded by land which is either commercially zoned, commercially undevelopable, publicly owned, or wetlands.

The petition alleged that Appellants constituted a majority of the freeholders residing within the proposed Borough. Timely exceptions to the petition were filed by the Township; Charlotte Davenport, James G. Davenport, James R. Davenport; the Tunkhannock Township Residents' Committee; and the "dirt road off of Cortright field residents" (Cortright Road residents). The exceptions asserted, inter alia, that the petition disclosed on its face the existence of eight freeholders within the limits of the proposed Borough; Pocono and the Mattiolis were not a majority of the freeholders in the proposed Borough; the petition should be dismissed because it failed to obtain the signatures of the majority of the freeholders residing within the limits of the proposed Borough pursuant to Section 202 of the Borough Code; and Appellants intentionally excluded an area forming a "peninsula" within the boundaries of the proposed Borough consisting of twenty-three freeholders (the Cortright Road residents), which indicated Appellants' desire to manipulate the number of freeholders and thus avoid the mandatory requirements of Section 202.

On September 1, 1993, the trial court dismissed the exceptions as to the number and sufficiency of the signatures on the petition and reserved ruling on the geographic integrity issue. Pursuant to Section 202 of the Borough Code, the trial court appointed a Borough Advisory Committee (Committee),[1]

1. The Committee shall make findings and conclusions regarding the desirability of incorporation and must consist of two residents of the proposed borough, two residents of the township outside of the pro-

which by a three to two vote on November 18, 1993 recommended in favor of Borough incorporation. The Committee found that the proposed Borough met the statutory criteria set forth in the Borough Code and that the proposed Borough is a harmonious whole with common interests and needs that can best be served by a borough government. The Committee concluded that geographic integrity as it relates to the Cortright Road residents would not isolate those residents from the Township. After receiving the Committee's report and conducting a further hearing, the trial court on December 20, 1993 dismissed the petition for incorporation.

(b)

At the outset, Section 202(c) of the Borough Code provides:

(c) Such committee shall, within sixty days of its creation, advise the court in relation to the establishment of the proposed borough. In particular, the committee shall render expert advice and findings of fact relating to the *desirability* of such an incorporation, *including, but not limited to, advice as to:*

(1) the proposed borough's ability to obtain or provide adequate and reasonable community support services such as police protection, fire protection and other appropriate community facility services;

(2) the existing and potential commercial, residential and industrial development of the proposed borough; and

(3) the financial or tax effect on the proposed borough and existing governmental unit or units. [Emphasis added.]

The trial court adopted the Committee's findings that the proposed Borough has the ability to provide police protection, fire protection, and other appropriate community facility services; existing and potential development was consistent with the desirability of the proposed Borough and it could provide finances to support itself; and the incorporation would have a minimal tax impact on the tax revenues of the Township, providing that the Township would realign its tax structure.

posed borough, and one resident of the county not residing in either area who shall serve as Committee chairperson.

In addition to the three factors set forth in the statute, the Committee determined that the proposed incorporated area is a harmonious whole with common interests and problems which can be properly served by a borough government. As well, the Committee concluded that the geographic integrity as it relates to the Cortright Road residents is not presently a negative factor and would not present any problems in the future. The trial court also adopted both of these findings. Nevertheless, the trial court recognized that there may exist some problems with the right-of-way on Cortright Road for residents living there and the residents would have no control over the zoning in the proposed Borough, which surrounds their properties. The trial court noted that if the Borough were incorporated, zoning would be determined by the Borough, which would be operating for its own interests and may not be responsive to the Cortright Road residents.

Moreover, the trial court expressed reservations regarding the number of the Borough's total residents, approximately eleven, and the problems inherent in allowing one family control of an entire borough, and indicated that Section 201 of the Borough Code, 53 P.S. § 45201, was recently amended by the legislature and permits incorporation of an area having a population of at least 500 residents.[2] The trial court opined that this legislation evidenced a trend away from the incorporation of boroughs with small populations as has been allowed in the past, but specifically recognized that the new minimum population requirement does not apply to this case.

The court pointed out that the petitioners were Pocono and the Mattiolis and, in addition, most of the residents of the proposed Borough are members of the Mattioli family. In its opinion, the trial court stated:

This incorporation, if approved, would give one family complete governmental control. The family would have control

2. *See* Act of December 18, 1992. P.L. 1650 (Act 181). Under Section 3 of Act 181, the minimum resident requirement applies to applications and petitions presented on or after March 25, 1992, except in counties of the fifth class, where the act shall apply to applications and petitions presented on or after the effective date of the act.

of all the governmental powers, including physical, economic and political. . . . This concentration of political power among a small family group has great potential for misconduct. . . . The proposed borough casts shadows of an old company town in modern dress.

Opinion, pp. 13–14. Citing *Glen Mills Schools Appeal,* 125 Pa.Commonwealth Ct. 604, 558 A.2d 592, *appeals denied,* 523 Pa. 651, 652, 567 A.2d 654, 655 (1989), the trial court also noted that this Court has recognized the problems of borough incorporation by one landowner and the potential for exclusion and exploitation and, stating that this was "the true issue," denied the petition for incorporation. Appellants' exceptions and motions for post trial relief and reconsideration were thereafter denied on January 19, 1994, and Appellants appealed to this Court.[3]

## II

Before addressing Appellants' main arguments, this Court must resolve a jurisdictional issue raised by Appellees, the Township, the Cortright Road residents, and the Tunkhannock Township Residents' Committee, who argue that the trial court lacked subject-matter jurisdiction because the petition for incorporation failed to comply with the requirements of Section 202(a) of the Borough Code, 53 P.S. § 45202(a). That section provides in relevant part:

(a) The application for incorporation shall be by a petition signed by a majority of the freeholders residing within the limits of the proposed borough. . . . The signatures must be secured within three months immediately preceding the presentation thereof to the court. Such petition shall be

---

**3.** This Court's scope of review is to affirm the trial court's findings of fact unless they are not based upon competent evidence, or unless the court's conclusions of law are not reasonably based upon its findings of fact. *In re Borough of New Morgan,* 527 Pa. 226, 590 A.2d 274, *cert. denied,* 502 U.S. 860, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991). The question of incorporation is addressed mainly to the discretion of the trial court, yet it is not beyond this Court's appellate scope of review to decide whether the trial court has committed an abuse of discretion. *Canterbury Village, Inc. Appeal,* 75 Pa.Commonwealth Ct. 334, 462 A.2d 865 (1983).

subscribed by and sworn to by at least one of the signers. The number of signers required to the petition shall be ascertained as of the date the petition was presented to court.

Appellees note that eight freeholders are identified in the petition for incorporation and out of those eight only two, Pocono and the Mattiolis, have signed the petition. Section 202(a) however clearly requires signatures of a majority of the *resident* freeholders of the proposed Borough. Therefore, the issue is whether Pocono and the Mattiolis constitute a majority of the resident freeholders of the proposed Borough.

Appellants contend that Appellees' jurisdictional claim, which was rejected by the trial court, has been waived before this Court because Appellees filed no cross-appeal from the trial court's decision. Appellants rely upon *Collier Township v. Robinson Township*, 25 Pa.Commonwealth Ct. 227, 360 A.2d 839 (1976), where this Court held that although it is indisputable that objections as to lack of subject-matter jurisdiction may be taken at any stage in a judicial proceeding, the objection must be raised at the first opportunity or within a reasonable time, otherwise it is waived. Appellees sub judice raised the jurisdictional question before the trial court at the first opportunity.

A court may raise the issue of its subject-matter jurisdiction on its own initiative at any stage of a proceeding; further, such jurisdiction cannot be obtained by consent of the parties or by waiver or estoppel. *Appeal of Borough of Valley–Hi*, 54 Pa.Commonwealth Ct. 53, 420 A.2d 15 (1980). Moreover, the jurisdictional issue here does not involve merely procedural or technical errors on the face of the petition, in contrast to *Valley–Hi* and *Appeal of Township of Ligonier*, 59 Pa.Commonwealth Ct. 532, 430 A.2d 389 (1981), relied upon by Appellants. Therefore, the jurisdictional issue raised by Appellees is not waivable and must be addressed by this Court.[4]

4. Appellees argue that the trial court erred in its conclusions that the proposed borough exhibited geographic integrity and constituted a harmonious whole; and that the impact of the proposed incorporation on tax revenues of the Township would be minimal. It is well settled

■ Appellees contend that John A. and Joann McElroy (the McElroys), who own commercially zoned property within the proposed Borough, are resident freeholders. Appellees argue that the signatures on the petition of two of the resident freeholders failed to constitute a majority of the four resident freeholders within the proposed Borough. Extensive and undisputed evidence was presented regarding the McElroys' use of their property which showed that the only structures on the property are billboards owned by another company that were on the property when the McElroys purchased it. The McElroys receive rent for the billboards and on several occasions have allowed vendors to operate on their property. Under these circumstances, the trial court properly concluded that the McElroys have no substantial contact with the property sufficient to allow them to be considered resident freeholders. It was undisputed that Mattco, Inc. is a resident freeholder and did not sign the petition. However, because Appellants constituted a majority of the resident freeholders in the proposed Borough, the trial court possessed subject-matter jurisdiction over the case.

## III

■ The gravamen of Appellants' appeal is that the trial court erred in refusing to grant the petition for incorporation once it found that all statutory and case law criteria were satisfied. The trial court is vested with discretion in determining whether the conditions prescribed in Section 202(c) of the Borough Code have been complied with, and the court's decision must be upheld absent a finding that its discretion was abused. *Borough of Bridgewater Petition*, 87 Pa.Commonwealth Ct. 599, 488 A.2d 374 (1985). Because of the

that without taking a cross-appeal, an appellee cannot raise issues decided adversely to it. *Appeal of Pesante*, 82 Pa.Commonwealth Ct. 242, 476 A.2d 474 (1984). Appellees filed no cross-appeal on these issues. Consequently, the only issues properly before this Court, other than the jurisdictional question, are those that Appellants have raised. The Tunkhannock Township Residents' Committee also asserts that the trial court violated its due process rights in formulating an accelerated hearing schedule. The trial court's determination in this regard was not appealed and is likewise waived.

vesting of discretion in the trial court, courts have rejected the contention that a trial court must grant incorporation if the statutory requirements are met and there are no technical objections. *Blandon Borough Incorporation Case,* 182 Pa.Superior Ct. 304, 126 A.2d 506 (1956).

 An advisory committee may properly consider factors other than those set forth in the Borough Code, and the trial court that reviews the committee's findings and conclusions may evaluate the petition for incorporation on the basis of those factors and other considerations which the Code does not specify. *Glen Mills Schools.* In addition to the three statutory criteria set forth in the Borough Code, the trial court must determine whether the proposed borough constitutes a harmonious whole with common interests and needs that can best be served by a borough government, *In re Borough of New Morgan,* 527 Pa. 226, 590 A.2d 274, *cert. denied,* 502 U.S. 860, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991); and whether borough incorporation would have an undue geographical impact on the existing township's territorial integrity. *Glen Mills Schools.* Under Appellants' analysis, satisfaction of these criteria would automatically compel the trial court to grant the petition for incorporation. Such a position misperceives the nature of the trial court's discretion when considering the desirability of a proposed borough incorporation.

Pennsylvania's appellate courts have made it clear that the proper analysis of borough incorporation petitions requires the court to look beyond the three statutory provisions of Section 202(c) of the Borough Code.[5] In *In re Incorporation of the Borough of Chilton,* 166 Pa.Commonwealth Ct. 28, 646 A.2d 13 (1994), this Court concluded that the trial court erred in limiting its analysis of the desirability of a proposed borough incorporation to the three statutory criteria and failing to consider other relevant factors. Specifically, the trial court in

5. *See Borough of New Morgan; In re Borough of Bear Creek Village,* 150 Pa.Commonwealth Ct. 595, 616 A.2d 111 (1992), *appeal denied,* 533 Pa. 664, 625 A.2d 1196 (1993); *Glen Mills Schools; Borough of Bridgewater; Canterbury Village.*

*Chilton* rejected as among relevant considerations the factor of whether an incorporation was against the public interest based upon the unavailability of any low income housing, thus violating the "fair share principle," which requires a local political unit to plan for and provide land use regulations meeting the legitimate needs of all categories of people who may desire to live within its boundaries. *See Surrick v. Zoning Hearing Board of Upper Providence,* 476 Pa. 182, 382 A.2d .105 (1977). Applied to the present matter, *Chilton* illustrates that the trial court properly exercised its discretion in considering factors beyond those directly addressed by the Committee and in addition to those required by law to be addressed.

 Appellants nevertheless contend that the trial court's denial of the petition on the basis that there are two few residents and that this "family borough" has great potential for misconduct, constitutes an error of law, and argue that the trial court's consideration of Act 181 amounted to an unconstitutional retroactive application of the Act's minimum resident requirement. The trial court however directly acknowledged that the Act 181 minimum resident requirement was not applicable to Appellants' petition. Although the courts have in the past granted petitions for incorporation where the proposed boroughs contained few residents at the outset,[6] this Court held in *Chilton* that it is nonetheless important to note the legislative change. Act 181 legislation represents evidence of a trend away from the incorporation of boroughs with few residents as has been allowed in the past. Consideration of this point is particularly relevant where, as here, the petitioners have not embarked on a course of development nor made substantial contributions to commencement of the development and their proposed plans are merely speculative at best.[7]

6. *See Bear Creek Village, New Morgan,* and *Canterbury Village.*

7. Contrast *Canterbury Village* where the petitioners had already installed complete road, water, and sewer systems, including a sewage treatment plant, and had executed contracts for fire, police, and garbage collection.

██ Long before Appellants filed their petition for incorporation, this Court in *Glen Mills Schools* firmly established that among the relevant factors affecting desirability of incorporation is a case where one landowner wants to separate and govern itself, which left this Court to ponder—

> [H]ow far would it go: colleges, universities, sundry institutions, corporations, larger land owners, perhaps smaller too, would break-off at will from Townships and into multiseparate boroughs. Each borough going its own way to create a mix of perhaps harmonious, perhaps antagonistic, but incongruous zoning or development patterns, and as well conflicting and often inconsistent services. The potential for exclusion, exploitation and overreaching becomes real and ever present.
>
> Suppose [petitioner] sold its property and moved, one whole Borough would then be bought, and available for unbridled and unrestricted control except as the Borough Code might provide.
>
> . . . .
>
> In the end we have not come so far in our evolving history to now go backward toward creating what would ultimately become feudal-like estates. This is certainly not the acceptable or reasonable basis and approach to local government.

*Id.*, 125 Pa.Commonwealth Ct. at 610, 558 A.2d at 595. It is precisely this concern that was articulated by the trial court *sub judice*. In addition, the trial court expressed the related concern that the Cortright Road residents, whose thin, isolated strip of land would be virtually surrounded by the proposed Borough, would have no control over zoning and proposed development in the Borough.[8]

It is especially appropriate to allow the trial courts latitude in evaluating factors whose relevancy has been established by

8. Appellants incorrectly state that in *Two Ponds, Inc. Appeal,* 87 Pa.Commonwealth Ct. 324, 489 A.2d 939 (1985), this Court held that a developer could petition for incorporation even though there were only four tenants living in the proposed borough. In that case however this Court vacated the trial court order for failure to establish an advisory committee as mandated by the Borough Code, and never reached the merits of the petition.

the evidence presented because the trial court judges, "having personal knowledge of the territory sought to be incorporated and of the witnesses who testify as to the facts, are more likely to arrive at a correct conclusion, as to the municipal needs, than the members of a tribunal sitting at a distance from the scene of controversy, who are without full information as to local conditions." *Blandon Borough,* 182 Pa.Superior Ct. at 307–308, 126 A.2d at 508. The trial court's decision in this instance was not, as Appellants contend, based on speculation and mere conjecture. Rather, it was based upon valid, considerable factors previously articulated by this Court. Contrary to Appellants' assertions, the trial court's actions were neither discriminatory nor violative of Appellants' due process rights. Moreover, the trial court clearly stated the reasons for its determination and the evidence on which it relied as the basis for its decision. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 13th day of July, 1994, the order of the Court of Common Pleas of Monroe County is affirmed.