646 A.2d 13

**In re INCORPORATION OF the BOROUGH OF CHILTON,**

**Monaghan Township, Appellant.**

**In re INCORPORATION OF the BOROUGH OF CHILTON,**

**Anne G. Miller and G. Thomas Miller, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1993.

Decided July 13, 1994.

Reargument Denied Sept. 8, 1994.

Albert G. Blakey, III, for appellant, Monaghan Tp.

G. Thomas Miller, for appellants Anne G. and G. Thomas Miller.

Catherine J. Gault, for appellee Borough of Chilton.

Before CRAIG, President Judge, SMITH, J., and KELTON, Senior Judge.

SMITH, Judge.

Monaghan Township (Township) and Anne G. Miller and G. Thomas Miller (the Millers) (collectively Appellants) appeal

from the December 28, 1992 order of the Court of Common Pleas of York County granting the petition for incorporation of the Borough of Chilton (Borough). The issue raised on appeal is whether the trial court abused or failed to appropriately exercise its discretion in interpreting the requirements for incorporation of a borough and overturning an advisory committee's recommendation on the question of desirability. For the reasons discussed below, the trial court's order is reversed.

## I

### (a)

In September 1990, Robert M. Mumma II, his wife Susan Mumma, Gemini Equipment Company, Double M Development Company, and the Wellington Heights Properties Owners Association by Martin L. Grass and Mark G. Caldwell (collectively Appellees) filed a petition with the trial court proposing to incorporate the Borough from land located within the Township, the Appellees being a majority of the freeholders residing within the limits of the proposed Borough. Written objections to the proposed incorporation were filed by the Township, the Millers, and several other individuals and citizens' groups.[1]

Pursuant to Section 202 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 45202, the trial court appointed a Borough Advisory Committee (Committee) to render expert advice and make findings of fact and conclusions regarding the desirability of incorporation. The Committee is required to consist of two residents of the proposed borough, two residents of the township outside of the proposed borough, and one resident of the county not residing in either area who shall serve as Committee chairperson. The Committee consisted of petitioners Robert M. Mumma II and Susan Mumma, Anne G. Miller and Mary E. Coble,

[1]. The other objectors were Lloyd Persun, Jacob Cottenham, Wayne Miller, Christopher H. Wolf, Marilyn M. Wolf, Harold R. Bentzel, Peggy Ann Bentzel, Perry F. Narten, and the group Citizens Organized to Protect the Environment.

two residents of the Township, and David C. Keiter, Esquire, a former planner who was appointed chairperson. In addition, the trial court appointed York County Planning Director Reed J. Dunn as an advisor to the Committee. The Committee held hearings on the proposed incorporation in June and July of 1991. A majority of the Committee by a three to two vote thereafter recommended against Borough incorporation in a July 1992 report to the trial court. Dunn also issued a report in which he agreed with the majority for the reasons stated in the majority report, but offered additional planning-related reasons arguing against incorporation and showing its undesirability.

The proposed Borough is largely undeveloped land owned by Appellees consisting of approximately 492 acres located entirely within the Township along the Yellow Breeches Creek and is presently farmland with a mansion and a few tenant houses located on the property. The principal residencé is occupied by the Mummas and their child. No adjoining landowners requested inclusion in the petition to incorporate. The proposal would cut off part of the Township from the main body of the Township, thereby creating a small peninsula, and in December 1992, the proposed Borough was populated by three adults.

The proposed Borough would contain a planned residential community featuring an eighteen-hole championship golf course and club house. Surrounding the golf course would be approximately 350 dwelling units, mostly single-family dwellings. In order to avoid the requirement of providing for a mix of uses, the Borough would not adopt a zoning ordinance. Land uses would be controlled through deed restrictions and architectural standards which would control building type, size, materials, and use. The proposed residential use is targeted at high income persons, with the average price of a home estimated to be $215,000.

(b)

In its majority report recommending against incorporation, the Committee focused mainly on two reasons for its recom-

mendation: the proposed Borough would be unable to function as a borough and comply with other requirements by law, in particular the Borough Code and the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–4051, for an indefinite and possibly prolonged time following incorporation; and plans for the proposed Borough are only speculation, with no assurance that they would be carried out as presented to the Committee. The Committee expressed concern that the "vague and speculative plan" for the Borough would never be implemented and determined that for these reasons and others, the incorporation would not be in the public interest.

The Committee concluded that the proposed Borough was clearly not a "harmonious whole," being largely vacant farm, orchard, and wood land: as a result, there is no existing development that could presently support the formation of a borough. The Committee further concluded that no evidence was presented to indicate that the present services provided by the Township were inadequate to meet the present needs of the area proposed for incorporation; incorporation would not presently have an adverse effect upon the tax base of the Township; however, because the land proposed for incorporation is undeveloped there are no common interests or problems that could better be addressed by a separate government; and the necessity for creation of another local government does not exist. The Committee also expressed concern that incorporation of a borough with fewer voters than required under the Election Code to fill all of the borough offices would be a result that is absurd, unreasonable, and impossible of execution.[2]

---

**2.** In addition, the Committee, relying upon this Court's decision in *Patrick Media Group, Inc. v. Department of Transportation,* 142 Pa.Commonwealth Ct. 359, 597 A.2d 274 (1991), concluded that a borough may not be created from a second class township such as Monaghan Township. Section 201 of the Borough Code, 53 P.S. § 45201, provides that the trial court may incorporate as a borough any area within its jurisdiction not already incorporated or part of an incorporated municipality. In *Patrick Media,* this Court held that second class townships fall within the definition of incorporated municipality. That decision was reversed however by the Supreme Court in *Patrick Media*

On October 26, 1992, the trial court issued its opinion, the content of which shall be further discussed below, that rejected the Committee's conclusions as well as matters raised by the Township. Despite its expressed reluctance, the trial court nevertheless held that the proposed Borough would be a harmonious whole, was desirable as defined by statute, and the request to incorporate must be submitted to a vote of the electorate of the proposed borough. On December 14, 1992, the trial court issued an order for a canvass by the board of elections to determine the number of eligible voters in the Borough. On December 18, 1992, as a result of the hearings which determined that there were only three eligible voters, the Court granted Appellees' request to hold the election on December 22, 1992. On December 28, 1992, having received certified election results from the board of elections showing a favorable vote on the referendum question, the court granted the petition for incorporation of the Borough. Appellants appealed to this Court.[3]

## II

The Township argues that the trial court recognized in its opinion that the project was not desirable and erred by misinterpreting the statutory requirement of desirability. In addition, the Millers argue that the trial court failed to exercise any discretion, predicated on a misunderstanding and misapplication of statutory and case law. Section 202(b) of The Borough Code, 53 P.S. § 45202(b), provides for establishment of the Borough Advisory Committee as set forth above.

*Group, Inc. v. Department of Transportation,* 533 Pa. 188, 620 A.2d 1125 (1993). The Court held that a township does not qualify as a municipality and therefore cannot be an incorporated municipality, despite its exercise of certain powers that are quasi-corporate in nature. Because of the Supreme Court's holding, Appellant's arguments predicated upon this Court's holding in *Patrick Media* are without merit and will not be addressed.

3. This Court's scope of review is to affirm the trial court's findings of fact unless they are not based upon competent evidence, or unless the court's conclusions of law are not reasonably based upon its findings of fact. *In re Borough of New Morgan,* 527 Pa. 226, 590 A.2d 274, *cert. denied,* 502 U.S. 860, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991).

Section 202(c) of The Borough Code, 53 P.S. § 45202(c) outlines the work of the Committee as follows:

(c) Such committee shall, within sixty days of its creation, advise the court in relation to the establishment of the proposed borough. In particular, the committee shall render expert advice and findings of fact relating to the *desirability* of such an incorporation, *including, but not limited to, advice as to:*

(1) the proposed borough's ability to obtain or provide adequate and reasonable community support services such as police protection, fire protection and other appropriate community facility services;

(2) the existing and potential commercial, residential and industrial development of the proposed borough; and

(3) the financial or tax effect on the proposed borough and existing governmental unit or units. [Emphasis added.]

Prior to December 1992, and thus applicable to Appellees' petition, Section 202(d), 53 P.S. § 45202(d), provided that:

[I]f it shall find, after hearing and advice of the committee, that the conditions prescribed by this section have been complied with, [the trial court] shall certify the question to the board of elections of the county for a referendum vote of the residents of the proposed borough. Upon receipt of the certified election results, the court shall enter a final decree granting or denying the prayer of the petitioners.

Appellants argue that the trial court expressly ignored the clear mandate of the legislature that the overall determining factor shall be the desirability of the borough incorporation and instead, the trial court merely analyzed the three factors found in the Borough Code and concluded that if those factors are satisfied, the project by definition is desirable.

 Upon review of the trial court's opinion, it is apparent that the court misunderstood the scope and importance of its discretion in this matter. The trial court is vested with discretion in determining whether the conditions prescribed in Section 202(c) have been complied with: its decision must be upheld absent a finding that its discretion was abused. *Bor-*

*ough of Bridgewater Petition,* 87 Pa.Commonwealth Ct. 599, 488 A.2d 374 (1985). The question of incorporation is addressed mainly to the discretion of the trial court, yet it is not beyond this Court's appellate scope of review to decide whether the trial court has committed an abuse of discretion. *Canterbury Village, Inc. Appeal,* 75 Pa.Commonwealth Ct. 334, 462 A.2d 865 (1983).

Because discretion is vested in the trial court to grant petitions for incorporation, courts have rejected the contention that a trial court must grant a petition if the statutory requirements are met and there are no technical objections. *Blandon Borough Incorporation Case,* 182 Pa.Superior Ct. 304, 126 A.2d 506 (1956). An advisory committee may properly consider factors other than those set forth in the Borough Code, and the trial court that reviews the committee's findings and conclusions may evaluate the petition on the basis of those factors and other considerations which the Code does not specify. *Glen Mills Schools Appeal,* 125 Pa.Commonwealth Ct. 604, 558 A.2d 592, *appeals denied,* 523 Pa. 651, 652, 567 A.2d 654, 655 (1989).

Throughout its opinion, the trial court expressed reservations and reluctance in coming to its conclusion to allow incorporation. After noting that formation of a new municipality goes against the trend toward regionalization in order to more economically provide necessary municipal services, the trial court stated that resolution of this conflict "is not the perogative [sic] of the Court.... The role of the Court is merely to interpret and enforce the law as the Legislature has written it." Trial Court Opinion, p. 3. In response to the report of the York County Planning Commission Director, which noted that the objective of Appellees' plans was to create an "elitist enclave" of very affluent individuals thus resulting in economic segregation, the trial court stated that "[t]his is probably the most compelling argument raised by the opponents of the proposed Borough. However it is really an argument for why the present law should be changed, rather than an argument as to whether this Borough is 'desirable' within the context of the present law." *Id.* at 14.

After stating its belief that "it would have been far better had this development occurred within the Township," the trial court observed: "The creation of new boroughs, for whatever reason, only expands the problems which flow from the existence of too many separate municipalities. For many economic and social reasons it would be better if municipal services were regionalized, rather than further fragmented." *Id.* at 16. Further, the trial court noted that the proposal to form a borough by a wealthy developer in order to avoid existing regulations "just doesn't seem right." Nevertheless, the court concluded that the proposed borough would be a "harmonious whole" and formation of the borough would be "desirable" as that term is defined by the Borough Code. The final paragraph of the court's opinion is as follows:

> The Court must admit some reluctance in coming to this conclusion. However, the conclusion is mandated by the statutory language. The Court would suggest that a review of the law by the legislature is appropriate. The opponents have raised many valid questions, which the law does not address. In particular, there should be some provision to make sure that plans are carried out if formation is based on future development, or the land reverts back to the Township. However, under the existing law, the request to incorporate must be submitted to a vote of the electorate of the proposed Borough.

*Id.* at 18.

Pennsylvania's appellate courts have made it clear that the proper analysis of borough incorporation petitions requires the court to look beyond the three statutory provisions of Section 202(c) of the Borough Code. It is thus evident that the trial court incorrectly believed it was constrained by the statutory language and was without authority to adopt the recommendation of the Committee to reject the petition for incorporation, despite the trial court's clearly expressed misgivings in reaching its conclusion.

### III

Several other factors addressed by the trial court compel the conclusion that the petition for incorporation

should have been denied on the basis that it was not desirable and did not constitute a harmonious whole. The trial court rejected the Township's contention that incorporation was against the public interest based upon the unavailability of any low-income housing, thus violating the "fair share principle." The fair share principle requires a local political unit to plan for and provide land use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries. *Surrick v. Zoning Hearing Board of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977). Such exclusionary techniques do not have the requisite substantial relationship to the public welfare. *Id.*

In *Surrick*, the Pennsylvania Supreme Court stated:

We conclude that every ... municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety and choice of housing. *More specifically, presumptively it cannot foreclose the opportunity of the classes of people mentioned for low and moderate income housing and its regulations must affirmatively afford that opportunity, at least to the extent of the municipality's fair share of the present and prospective regional need therefor.* [Emphasis in original.]

*Id.* at 190, 382 A.2d at 109, quoting *Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 67 N.J. 151, 336 A.2d 713, *cert. denied*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975). The basic proposition is that a political subdivision cannot isolate itself and ignore the housing needs of the areas surrounding it. *Surrick.* Although *Surrick* is a land use case involving a zoning hearing board's denial of an application for variance, application of the fair share principle is nonetheless appropriate in considering whether a petition for incorporation of a borough should be approved where the proposed plan for that borough is clearly exclusionary. Therefore, the trial court erred in rejecting this factor as a relevant inquiry.

■ Of further relevance are the concerns expressed by the Committee and the Township that proposed plans for the Borough were merely speculative and that the proposed Bor-

ough is presently unable to provide the required number of elected officials. The trial court noted that neither the Borough Code nor the Election Code contains a requirement that there be sufficient residents to fill all of the required offices at the inception of a borough's existence.[4] Moreover, in *Canterbury Village*, this Court considered as among relevant factors a borough's projected population. Although it stands to reason that as the plans for a borough materialize and the borough would in short order contain the minimum number of residents needed to fill the statutorily prescribed elective offices, it is not inappropriate to evaluate this factor when considering a petition for borough incorporation.

Of particular concern to the Committee and to this Court is the potential incorporation of a borough with few residents and no guarantee that the proposed plans will be carried out. Section 201 of the Borough Code, 53 P.S. § 45201, was recently amended by the legislature:

### § 45201. Areas may be incorporated

The courts of common pleas may incorporate any contiguous area within their jurisdiction, not already incorporated or a part of an incorporated municipality *and having a population of at least 500 residents*, as a borough, which, after having been so incorporated, shall be a body corporate and politic by the name which shall be decreed by the court. [Emphasis added.]

Act of December 18, 1992, P.L. 1650 ("Act 181"). Under Section 3 of Act 181, the minimum resident requirement applies to applications and petitions presented on or after March 25, 1992 except in counties of the fifth class, where the act shall apply to applications and petitions presented on or after the effective date of the act. Although the minimum resident requirement is not directly applicable in the present

---

**4.** The trial court incorrectly relied upon *Two Ponds, Inc. Appeal*, 87 Pa.Commonwealth Ct. 324, 489 A.2d 939 (1985), in which there were only four tenants of the proposed borough at the time the petition was filed. That case is not instructive on this issue because the Court never reached the merits of the petition for incorporation, and instead vacated the trial court order for failure to establish an advisory committee as mandated by the Borough Code.

case, this Court nevertheless believes it is important to note the legislative change.

Act 181 represents evidence of a trend away from the incorporation of boroughs with few residents as has been allowed in the past,[5] and this concern is heightened in cases such as the present where the petitioners have neither embarked on a course of development nor made substantial contributions to commencement of the development. The instant proposal stands in contrast to *Canterbury Village*, in which the petition for incorporation was granted where there was a small resident population, but the landowner had already installed complete road, water, and sewer systems, including a sewage treatment plant, and had executed contracts for fire, police, and garbage collection.

In *Glen Mills Schools*, this Court articulated its concern regarding a situation in which one landowner wants to separate and govern itself, which left this Court to ponder—

> [H]ow far would it go: colleges, universities, sundry institutions, corporations, larger land owners, perhaps smaller too, would break-off at will from Townships and into multi-separate boroughs. Each borough going its own way to create a mix of perhaps harmonious, perhaps antagonistic, but incongruous zoning or development patterns, and as well conflicting and often inconsistent services. The potential for exclusion, exploitation and overreaching becomes real and ever present.
>
> . . . .
>
> In the end we have not come so far in our evolving history to now go backward toward creating what would ultimately

---

5. Courts have in the past granted petitions for incorporation where the proposed boroughs contained few residents at the outset. *See In re Borough of Bear Creek Village*, 150 Pa.Commonwealth Ct. 595, 616 A.2d 111 (1992), *appeal denied*, 533 Pa. 664, 625 A.2d 1196 (1993) (108 individuals in proposed borough); *New Morgan* (proposed borough of 3,700 acres with only six occupied homes in the proposed borough); *Canterbury Village* (incorporation petition signed by twelve people, which were the two owners and ten people who had agreed to purchase residential units in the proposed development).

become feudal-like estates. This is certainly not the acceptable or reasonable basis and approach to local government. *Id.,* 125 Pa.Commonwealth Ct. at 610, 558 A.2d at 595. In light of these considerations, the trial court erred in failing to exercise its discretion and to adopt the recommendations of the Committee and the York County director of planning. Accordingly, the trial court's order is reversed.

## ORDER

AND NOW, this 13th day of July, 1994, the order of the Court of Common Pleas of York County is reversed.